Commonwealth, Appellant, *v.* Albacore Corporation.

Argued May 22, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Eugene J. Anastasio,* Deputy Attorney General, for Commonwealth, appellant.

*William P. Thorn,* with him *Samuel H. Levy,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE EAGEN, October 16, 1974:

The appellee, Albacore Corporation, is a California corporation, which was duly licensed to carry on business in this Commonwealth on August 26, 1959.[1] Dolphin Corporation (an affiliate of Albacore) by deed dated August 3, 1959, acquired an office building in Philadelphia, Pennsylvania, commonly known as the Packard Building, located at 15th and Chestnut Streets, from The Fifteenth and Chestnut Realty Company for a consideration of $2,204,184.[2] Said deed provided that the property "was subject to the lien of a certain mortgage [in favor of The Equitable Life Assurance Society of the United States] securing the principal sum of $5,350,000. . . ." However, the deed also recited that: "[I]t is expressly understood that Grantee does not assume, and is hereby expressly relieved from, any personal liability either as Indemnitor or otherwise, to

---

[1] The facts involved in this litigation were stipulated by the parties in the Commonwealth Court, and the litigants agreed that the case was to proceed to trial without a jury.

[2] $2,195,300 of the purchase price was paid for the building itself and the remaining $8,884 was paid for personal property connected with the building.

the Grantor or to any other corporation or person, for or by reason of the above mentioned, or any other mortgage debts or interest thereon or other sums secured upon or payable out of the above described property or any part thereof."

Albacore, under a separate and contemporaneous agreement, purchased a one-third interest in the Packard Building from Dolphin for a consideration of $734, 728.

The Pennsylvania Foreign Excise Tax Act[3] imposed a non-recurring one-third of one percent tax "upon the

---

[3] Act of July 25, 1953, P. L. 560, 72 P.S. §§1861 et seq. (now repealed and replaced by the Act of March 4, 1971, P. L. 6, No. 2, 72 P.S. §§8001 et seq.), which in the pertinent sections provided as follows:

"Section 1. * * *

" 'Increase of Capital' " means . . . (b) as to corporations admitted to do business in this Commonwealth after the effective date of this act, capital actually employed within this Commonwealth at the time of or after receiving a certificate of authority to do business from the Department of State and any increase thereof.

"Section 2. Imposition of Tax.—From and after the effective date of this act, every foreign corporation, in addition to complying with all the laws of the Commonwealth now or hereafter in effect, shall for the privilege of exercising its franchises in Pennsylvania pay to the Department an excise tax of one-third of one per centum upon the amount *of any increase of capital actually employed wholly within this Commonwealth.* [Emphasis supplied.]

"Section 3. Initial and Annual Report.

. . . .

"Every foreign corporation shall thereafter make a report annually to the Department, on a form prescribed by the Department, on or before the seventy-fifth day after the close of its calendar or fiscal year setting forth therein (1) the state or country in which incorporated or created, (2) the date of incorporation or organization, (3) the date it qualified or was issued a certificate of authority to do business in this Commonwealth, (4) the name and address of its president or treasurer, (5) the greatest amount of capital actually employed wholly within this Commonwealth

amount of *any increase* of capital actually employed wholly within this Commonwealth."[4] [Emphasis supplied.] Therefore, in compliance with this act, the appellee filed on August 24, 1959, its initial Foreign Excise Tax Report. In this return, Albacore reported that its investment in the Packard Building was $734,728, its sole capital employed in Pennsylvania.[5]

Subsequently, Albacore filed its Pennsylvania Franchise Tax and Corporate Net Income Tax Report, and its Foreign Excise Tax Report for the short period ending September 30, 1959, and duly reported an increase in capital employed in this Commonwealth of $125,886.57.

The initial Foreign Excise Tax Report and the report for the short period ending on September 30, 1959, were both settled by the Department of Revenue on June 23, 1960, and by the Auditor General on July 7, 1960. Thereafter, the appellee filed the necessary yearly tax forms for the fiscal years 1960 through

---

during such calendar or fiscal year, and (6) such other information as the Department shall require for the purpose of this act, and shall pay to the Department, at the time of filing such report, the tax due under this act for such annual period.

"Section 4. Settlement, Resettlement and Appeal.—All taxes due under this act shall be settled by the Department, with the approval of the Department of the Auditor General, and such settlement shall be subject to resettlement, review, appeal and refund to the same extent and in the same manner as is now provided by law for the settlement, resettlement, review, appeal and refund of capital stock and franchise taxes imposed upon corporations."

[4] Id. §2, 72 P.S. §1861 (now repealed).

[5] The report went on to state that the appellee owned a "[o]ne-third undivided interest in the equity of redemption, above a mortgage which this corporation did not make or assume and as to which it has no obligation by way of indemnity or otherwise to anyone whatsoever, in land and building known as Packard Building, Southeast corner 15th & Chestnut Streets, Philadelphia, Pennsylvania."

1964. However, these forms reported no new tax liability[6] for the appellee because Albacore asserts it did not increase, in any of these years, the capital it employed in this Commonwealth beyond the $860,-614.57 figure it reported in 1959. None of these returns considered the existing unassumed mortgage on the Packard Building to be part of the appellee's capital employed wholly within this Commonwealth.

On June 18, 1965, Albacore disposed of all of its assets in Pennsylvania and duly filed its final Pennsylvania Foreign Excise Tax Report. Once again, this report stated: that the appellee did not increase the capital it utilized in the Commonwealth during the taxing years; and, that it did not consider the unassumed mortgage to be part of its employed capital. However, the Commonwealth, in its settlement, found that the appellee did increase its capital by the amount of $1,226,603 during this final taxing period.[7]

---

[6] Tax liability, under this act, is only incurred if the capital of the corporation employed wholly within this Commonwealth at any time during the taxing year is larger than the greatest amount of capital employed in Pennsylvania in any prior taxing year.

[7] The Department of Revenue arrived at this figure via the following calculations:

| | |
|---|---|
| Cost of real and personal property | $2,311,248 |
| Mortgage | $5,350,000 |
| Total capital | $7,661,248 |
| One-third thereof | $2,553,749 |
| Less depreciation | $ 466,532 |

| | |
|---|---|
| Greatest amount of capital employed within the Commonwealth during the year | $2,087,217 |
| Greatest amount of capital actually employed wholly within Pennsylvania at any time prior to this year | $ 860,614 |

| | |
|---|---|
| Increase in capital employed in Pennsylvania subject to Excise Tax | $1,226,603 |

| | |
|---|---|
| Tax of one-third of one percent of increase | $ 4,088.68 |

The appellee filed a petition for resettlement arguing: (a) that the mortgage should not be included as part of its capital employed wholly within this Commonwealth; and, (b) that, even if the mortgage should properly be included as part of its capital, the Commonwealth is barred by the Statute of Limitations from now so asserting. However, this petition for resettlement was rejected. Albacore filed a timely Petition for Review with the Pennsylvania Board of Finance & Revenue, which was denied after a hearing on the matter.

Albacore filed an appeal in the Commonwealth Court, which entered an order reversing the Board of Finance and Revenue and granting judgment in favor of the appellee. The Commonwealth then filed a direct appeal with this Court.[8]

The Commonwealth Court reasoned that since the Foreign Excise Tax only subjects foreign corporations to a tax on any increase in their capital employed in this Commonwealth during the taxing year, and that since the appellee did not first employ the unassumed mortgage as capital in Pennsylvania in 1965, the Fiscal Code's[9] two-year Statute of Limitations[10] barred the

---

The difference in this calculation from Albacore's return and from that of the prior years' returns was that this formula included the mortgage as part of the appellee's capital employed wholly within Pennsylvania.

[8] The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, No. 223, art. II, §203, 17 P.S. §211.203 (Supp. 1974), provides that all final orders from the Commonwealth Court entered in an appeal from the Board of Finance and Revenue shall be appealable to this Court as a matter of right.

[9] The Act of April 9, 1929, P. L. 343, as amended, 72 P.S. §§1105 et seq. which is made applicable by Section 4 of the Foreign Excise Tax Act, supra, 72 P.S. §1861.

[10] Id. 72 P.S. §1105, which relevantly provides: "If a resettlement shall not be made or authorized hereunder within the time above prescribed [two years after the date of any settle-

Commonwealth from pursuing this matter. Therefore, it was unnecessary to resolve the question of whether or not the unassumed mortgage should have properly been considered as part of Albacore's capital employed wholly within Pennsylvania. We agree.

The appellant contends that the Commonwealth is never estopped by a mistake of one of its agents from imposing an otherwise proper tax.[11] We do not disagree with this statement; however, the Commonwealth completely misses the point. We are not here dealing with a case of estoppel; we are dealing with a Statute of Limitations which can and does bar the Commonwealth from pursuing prior tax obligations.

The Commonwealth is merely attempting to accomplish a result indirectly that it cannot properly achieve directly. It is trying to resettle the appellee's 1959 tax return six years after the return had been filed and five years after it had been settled, which action is clearly prevented by Section 1105 of the Fiscal Code, supra. The mortgage to Equitable, if indeed it constituted "capital actually employed wholly within this Commonwealth", is not something which was first employed in 1965, but was utilized in the initial 1959 purchase.

Judgment affirmed.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.

---

ment except such as have been appealed from], an account upon which a final discharge has been granted, shall not be opened, but shall be quieted and finally closed."

[11] In support of this contention, the Commonwealth relies upon *Commonwealth v. I-T-E Circuit Breaker Co.*, 69 Dauph. 265 (1956), and *Commonwealth v. Camax*, 83 Dauph. 56 (1964). However, the resettlement involved in both of these cases was initiated within the allotted statutory time period.